Judge Berman

'08 CIV 6064



UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

MICHAEL J. RESCH, AND
LORETTE M. RESCH

    Plaintiffs

VS.                                          :        CASE NO.:

BEACHCOMBER USA, INC., AND                   :
ALL AMERICAN INDUSTRIES, CORP.,              :

    Defendants                               :

## COMPLAINT

Plaintiffs Michael J. Resch and Lorette M. Resch ("Plaintiffs" or the "Reschs"), by

and through their attorneys, herein state the following as and for their Complaint against

Defendant Beachcomber USA, Inc. ("Beachcomber") and Defendant All American

Industries, Corp., ("AAI") (Defendants Beachcomber and AAI are sometimes referred to

collectively herein as "Defendants"):

## INTRODUCTION

1.     About 50 years ago, the Reschs built a hotel known as the Island

Beachcomber Hotel on Lindebergh Beach in St. Thomas, Virgin Islands.  The Reschs

owned and operated the Hotel through a company, which they had named Allison, after

their daughter.  In 2002, Franco J. Nocito ("Nocito"), the principal of both Defendants came into the Reschs' lives, and after gaining their trust, he convinced them to sell that hotel and the valuable beachfront ground lease on which it is located to his company, Defendant Beachcomber.  For this, Nocito and Defendant Beachcomber promised to pay the Reschs a total purchase price of two million dollars ($2,000,000.00).

The transaction was structured as a stock purchase, and the Reschs transferred these assets to Defendant pursuant to a certain Stock Purchase Agreement with Defendant Beachcomber dated as of August 21, 2003.  In exchange for the transfer of their stock, Defendant was to pay $300,000 in cash to the Reschs at the closing, and $1.7 million under a 10 year promissory note with interest in 40 quarterly installments and secured by a performance bond from a financial entity with an AM Best A+ rating or better.

The Reschs lived up to their end of the bargain and turned the Hotel over to Defendant on October 1, 2003.  Now, almost five years after this closing occurred, Defendants have paid only the $300,000 up front portion of the purchase price to the Reschs.  The Reschs have not received a single cash payment under the $1.7 million purchase money promissory note from the Defendants and they have not received the required performance bond to secure that promissory note.

2

At the same time as the Defendants failed to pay the Reschs the sums due them in respect of the transfer of this stock, Defendant Beachcomber has failed to pay other entities – both private and governmental – sums due them in respect of Defendant Beachcomber's operation of the Island Beachcomber Hotel.

Defendant Beachcomber is in breach of payment and in breach of its obligation to provide the required performance bond to secure the promissory note required under its Purchase and Sale Agreement with the Reschs. Defendant AAI has defaulted on that promissory note to the Reschs. Consequently, the Reschs have not been paid the sums promised under the Purchase and Sale Agreement. Because Defendant Beachcomber failed to provide that performance bond, Plaintiffs' sole recourse is against the Defendants. For Defendants failure to perform their obligations, the Reschs seek compensatory damages from the Defendants.

Moreover, because the Defendants have failed to perform their obligations, the Reschs ask that the agreements between them be set-aside and rescinded, that a formal accounting be conducted of the operations of the hotel and the use of these assets, that in accordance with this accounting the parties be restored to their status quo ante and that the stock of Allison and all of its assets be returned to them immediately.

3

Finally, the Reschs also request that pending the outcome of this action a receiver be appointed immediately to take over and operate the assets that Defendant Beachcomber received from the Reschs to prevent further waste and dissipation of those assets during the pendency of this action.

## PARTIES

2.    Plaintiffs Michael J. Resch and Lorette M. Resch reside in St. Thomas in the Virgin Islands and at 17 Raiders Lane, Darien, Connecticut.

3.    Upon information and belief, Defendant Beachcomber is a Delaware corporation with its principal place of business in the State of New York.

4.    Upon information and belief, Defendant AAI is a Delaware corporation with its principal place of business in the State of New York.

## JURISDICTION AND VENUE

5.    This Court has personal jurisdiction over each of the Defendants based on their presence in the State of New York.

6.    Venue is proper in this court because each of the Defendants has consented to venue in this court in their respective agreements with Plaintiffs.

4

## ALLEGATIONS APPLICABLE TO ALL COUNTS

7.    Approximately 50 years ago, the Reschs conceived of the idea of building a hotel on the beach in the Virgin Islands.

8.    After negotiating with, and obtaining the agreement, of the local governmental authorities, the Reschs entered into a long-term ground lease for beachfront property along Lindebergh Beach Road, St. Thomas, Virgin Islands, where the hotel which they built, The Island Beachcomber Hotel (the "Hotel"), still stands today.

9.    For about 50 years, the Reschs owned and operated the Hotel through a company, which they had named Allison Enterprises, Inc. ("Allison"), after their daughter. In those years, the Reschs owned and operated the Hotel as a family-run business, earning and maintaining for it a fine reputation locally as the Hotel also became known abroad as a quality resort destination.

10.    Over the many years in which they had operated the Hotel, the Reschs received a number of offers to purchase it from companies and individuals alike.

11.    In or around 2002, an individual named Franco Nocito ("Nocito") presented the Reschs with a proposal to purchase the Hotel, and operate it under one of his affiliated companies, which offer it appeared that they could not refuse.

5

12.    To obtain their confidence, Nocito represented himself to the Reschs to be a man of substance and a principal of many large and valuable enterprises. Most importantly, Nocito held himself out as a man who could be trusted to operate their Hotel and carry on the fine tradition of the Hotel that the Reschs – who are getting on in years – had created and maintained.

13.    The structure of the deal Nocito proposed was a stock purchase transaction. The Reschs would sell the stock and assets of their company, Allison, to a company operated by Nocito and his associates – ultimately the Defendant Beachcomber – for a total purchase price of $2 million.

14.    The initial payment structure agreed to between Defendant Beachcomber and the Reschs was that the sellers would receive $400,000 in cash at the closing and a five (5) year promissory note, secured by both a guaranty and a performance bond, for the payment of the remaining $1.6 million of the purchase. This original five (5) year note was to be payable in only 20 quarterly installments with interest calculated at the rate of LIBOR plus 2%, adjusted annually. This original promissory note was to have been secured by both a performance bond from an AM Best A+ rated insurance company or financial entity *and* a guarantee from a corporate entity, purportedly controlled by Nocito.

These terms are reflected in a signed agreement between the Reschs and Defendant Beachcomber dated as of February 18, 2003.

15. Although there was a signed purchase and sale agreement between them in February, it was apparently not sufficiently favorable to the buyer. So, Nocito "re-negotiated" this deal with the Reschs for many months, ultimately entering into an "Agreement for the Purchase and Sale of Stock" dated August 21, 2003 (the "August 2003 Agreement") that is the subject of this action. See Exhibit "A", attached. In the August 2003 Agreement, Nocito's "Buyer" remained the "Beachcomber USA, Inc.," the Defendant Beachcomber, herein. See Exhibit "A," p. 1.

16. The purchase price remained $2 million in the August 2003 Agreement, however, the August 2003 Agreement specified that the Reschs would be paid only $300,000 at closing and the $1.7 million balance would be paid under a 10-year promissory note from the Defendant to the Reschs in 40 quarterly installments with the interest at the rate of LIBOR plus 2%. See Exhibit "A" at §§ 2(a) – (b).

17. In addition to stretching out the note payments out to ten (10) years instead of five (5), the promissory note given in payment of the bulk of the total purchase price of the Hotel would no longer be secured by both a performance bond and a guarantee from one of Nocito's affiliates. Rather, under the August 2003 Agreement, the promissory note

payments were required to be secured *only* by a performance bond from an AM Best A+ rated insurance company or financial entity.  See Exhibit "A" at § 2.(b).

18.    After the August 2003 Agreement and promissory note were prepared and signed, however, Nocito and his associates delayed in performing their obligations prior to closing.  Although the Defendant Beachcomber had not paid the $300,000 due at closing and had failed to provide the performance bond required to secure the 10-year promissory note, on September 23, 2003, Nocito prevailed on the Reschs to "close in escrow" and deliver operating control over the Hotel, effective on October 1, 2003, to Nocito and his selected associates, – his attorney, Jonathan Austern from Long Island, New York, and Luc Van Acker, – whom Nocito had chosen to take over the running of the Hotel from the Reschs.

19.    Notwithstanding the Defendant Beachcomber's failure to perform even its most basic obligations under the August 2003 Agreement and that none of these changes to the deal which were proposed by Nocito was to the advantage of the Reschs, the Reschs still honored their deal with Nocito and Defendant Beachcomber and delivered the operating control over the Hotel to them on October 1, 2003.

20.    Having gotten control of the Hotel away from them, Nocito then prevailed on the Reschs to amend certain other key terms of the deal that had been struck.  Among

8

the amendments he proposed were changes to the payment structure. More specifically, Nocito prevailed on the Reschs to reduce the amount of the "up front" cash payment that the Reschs would receive. Nocito also convinced the Reschs to accept a substituted promissory note from a different maker and to agree to release the original promissory note from Defendant Beachcomber, which it delivered to them with the August 2003 Agreement.

21.     Significantly, however, Nocito failed to persuade the Reschs to release the obligation in the August 2003 Agreement that required Defendant Beachcomber to provide a performance bond to secure the promissory note.

22.     Therefore, notwithstanding Defendant Beachcomber's obligation to provide a secured note, about six (6) months after the Reschs delivered the control of their Hotel to his companies, Nocito and the Defendants provided only the unsecured promissory note (the "Promissory Note") of Defendant AAI, another Nocito affiliate, in the principal amount of $1,700,000.00. Like the predecessor note from Defendant Beachcomber, the Promissory Note from AAI was dated as of September 23, 2003. See Exhibit "B," attached.

23.     By this time, however, Nocito and his associates had engendered the trust of the Reschs. Thus, shortly after making his initial deal to get this Hotel from the trusting

Reschs for a small up-front payment and an unsecured note, Nocito approached the Reschs to advance him and his other affiliates more funds for their use in other development projects.  Had they foreseen the way in which Nocito would eventually abuse their trust, the Reschs might not have agreed to accept Nocito's amendments or to advance him the additional hundreds of thousands of dollars they gave.  Hindsight may be "20/20," however, the Reschs' foresight was not.

24.    Over the next two or three years, the Reschs advanced to Nocito and/or his affiliated companies, the total sum of almost an additional $2 million in cash, a remarkably coincidental number because it is only slightly more than the amount owed to the Reschs by Defendants for their Hotel and other assets.  Despite repeated requests from the Reschs, no portion of the funds they have advanced to Nocito's affiliates have been repaid by either Nocito or his affiliated companies.  Neither were they successful in their many attempts to persuade Nocito to have his affiliates perform their obligations and pay the Reschs what they were due under the August 2003 Agreement or the Promissory Note.

25.    Defendant Beachcomber has failed to meet its obligations to the Reschs under the August 2003 Agreement.

26.    Defendant Beachcomber had failed to pay the full amount of the cash portion of the purchase price that was required to be paid up front at the closing.

27.    Defendant Beachcomber has failed to provide the required performance bond from an AM Best A+ rated insurance company or financial entity to secure that portion of the purchase price, which was to have been paid under a promissory note.

28.    The quarterly payments due the Reschs under the unsecured Promissory Note representing the balance of the purchase price have not been paid by either Defendant Beachcomber or Defendant AAI.

29.    More disturbingly still, upon information and belief, Defendant Beachcomber has failed to satisfy various obligations – both financial and otherwise – to the local governmental authorities concerning the Hotel and its operations in the Virgin Islands.

30.    The ground lease upon which the Hotel is located is absolutely critical to the continued operation of the Hotel.  Indeed, without that ground lease, the Hotel can neither operate nor generate any revenues.

31.    Upon information and belief, the greater bulk of the revenues generated by the Hotel are transferred by the Defendant Beachcomber to accounts owned by different entities.

11

32.     Upon information and belief, the Defendant Beachcomber has failed to take necessary steps to protect and maintain the ground lease and has failed to meet its other obligations to local governmental authorities with respect to the operation of the Hotel.

33.     Upon information and belief, by its conduct and omissions, Defendant Beachcomber has placed these assets, – the Hotel, its revenues and the ground lease, – into serious and immediate jeopardy.

34.     All of Defendants' conduct and omissions have jeopardized the continued operation, use and ownership of the Hotel.

**COUNT I**
**BREACH OF THE AUGUST 2003 AGREEMENT**

35.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1-34, above.

36.     Defendants have materially breached the August 2003 Agreement by failing and refusing to perform their obligations under the agreement.  Among their material breaches are Defendants' failure and refusal to pay the purchase price, make the required quarterly Promissory Note payments and provide the required performance bond to secure the payment under that Promissory Note, all as required under the August 2003 Agreement.

37.    Plaintiffs have suffered and will continue to suffer damages as a result of Defendants' material breaches of the August 2003 Agreement.

**COUNT II**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

38.    Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1-37, above.

39.    Defendants' conduct constitutes a breach of the implied covenant of good faith and fair dealing.

40.    Plaintiffs have been damaged thereby.

**COUNT III**
**DEFAULT OF PAYMENT UNDER THE PROMISSORY NOTE**

41.    Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1-40, above.

42.    Defendant AAI has defaulted in its obligations to make quarterly payments of principal and interest under the Promissory Note.

43.    Plaintiffs have been damaged thereby.

**COUNT IV**
**UNJUST ENRICHMENT**

44.    Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 43 above.

45.    Defendant Beachcomber has benefited and continues to benefit from its use and operation of the Hotel and the revenues, which it derives from such operations.

46.    Defendant Beachcomber has been unjustly enriched as a result of its failure to compensate Plaintiffs for the economic benefit it has derived and will continue to derive from its wrongful retention of both the revenues from the Hotel and the sums due to the Reschs under the August, 2003 Agreement, at the expense and to the detriment of the Reschs.

**COUNT V
UNJUST ENRICHMENT**

47.    Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 46 above.

48.    Defendant AAI has benefited and continues to benefit from its conduct, including, but not limited to, its retention of the funds that it was to have paid to the Reschs under the Promissory Note.

49.    Defendant AAI has been unjustly enriched as a result of its failure to pay the sums due under the Promissory Note to the Reschs and for the economic benefit it has derived and will continue to derive from its wrongful retention of the sums due to the Reschs under the Promissory Note, at the expense and to the detriment of the Reschs.

**COUNT VI**

**EQUITABLE REMEDIES FOR BREACH:  RESCISSION AND AN ACCOUNTING**

50.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1-49, above.

51.     Defendants have failed to perform their respective obligations under the August 2003 Agreement or the related Promissory Note.

52.     Plaintiffs have not received, and Defendants have not paid, the promised consideration that Plaintiffs were to have received in connection with the August 2003 Agreement.

53.     The Hotel and the ground lease on which it is situated is a truly special and unique property.  Defendants' conduct and omissions have placed these valuable and unique assets in jeopardy.

54.     Plaintiffs have been damaged by the conduct of Defendants as alleged herein in a way which cannot be compensated in money damages alone.

55.     The Plaintiffs have no adequate remedy at law.

56.     Accordingly, and in the alternative to compensatory damages, Plaintiffs request that the August 2003 Agreement and the Promissory Note be rescinded and a formal accounting be done of the Hotel, its revenues and liabilities and all other assets transferred to Defendant Beachcomber, as well as any payments made by Defendants to

the Reschs, in order for the transaction to be set aside and the parties to be restored there respective positions prior to such agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims:

a) Damages;

b) *Punitive damages*;

c) Attorneys' Fees;

d) Interest;

e) Costs;

f) Declaratory relief rescinding the August 2003 Agreement and rendering it invalid and unenforceable *ab initio*;

g) *An accounting of all monies paid or received in respect of the rescinded* Agreement and the operation of the Hotel including an order of restitution to the parties to restore them to their status *quo ante*,

h) The appointment of a receiver to hold, manage and protect the Hotel and all related property and assets pending the outcome of this action; and

i) Such other and further relief as in law or equity apply.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demands a trial by jury of all triable issues as of right by jury in the above action.

DATED this 2nd day of July, 2008.

THE PLAINTIFFS
MICHAEL J. RESCH AND LORETTE M. RESCH

By:_____

Timothy G. Ronan (TR7693)
Cara Ann Ceraso (CC2412)
Pullman & Comley, LLC
300 Atlantic Street
Stamford, CT 06901-3522
Telephone 203-674-7900
Facsimile 203-363-8659
tronan@pullcom.com
cceraso@pullcom.com

Stamford/72289.1/TRONAN/338164v1

Exhibit
A

## AGREEMENT FOR THE PURCHASE AND SALE OF STOCK

AGREEMENT made this  day of August, 2003, between Michael S.

Resch  and Lorette M. Resch, hereinafter referred to as ASellers@ and Beachcomber USA, Inc.,

and/or its assigns, (hereinafter referred to as A  Buyer @)

WHEREAS, Buyer desires to purchase all of the right, title and interest which Sellers

have or claim to have in Allison Enterprises, Inc. and to the Lease(s) that concerns the

Island Beachcomber Hotel located in St. Thomas, U.S. Virgin Islands ( hereinafter referred

to as the ACompany@ ), including but not limited to all issued and outstanding stock in the

Company held or to be held by Michael S. Resch and Lorette M. Resch;

WHEREAS, sellers desire to sell all of their ownership in the company to Buyer;

WHEREAS, there are no other authorized or existing agreements, options, or

subscriptions for the purchase , ownership or acquisition of any of the aforesaid shares of

stock of the Company by any person, entity, firm or corporation; and

WHEREAS, it is the expressed intent, will and objective of Buyer and Sellers that all

of the authorized shares of stock of the Company, shall be acquired and become the

property of Buyer, making Buyer 100% owner of the stock of the Company free and clear

of liens, claims and encumbrances of any kind on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants

contained herein  and other good and valuable consideration, the receipt and sufficiency of

which is hereby acknowledged, the parties hereto agree as follows:



1. **Sale of Corporation and Stock Interest**: Subject to the conditions precedent set

forth in Paragraph 4 hereof and to the provisions of paragraph 5 hereof, Seller does hereby

1

ree to sell, convey and transfer to Buyer and Buyer does hereby agree to purchase all of

Sellers right, title and interest in the Company, including, but not limited to, the 1000

ares of stock at no par value evidenced by stock certificate numbers 1 and 2 (hereinafter

'erred to as the AStock@) at the purchase price set forth in paragraph 2 below.

2. **Purchase Price**: The total purchase price to be paid by Buyer for all of the stock

Corporate Assets, good will and any and all other assets of the corporation shall be the

m of Two Million ($2,000,000.00) Dollars. The Purchase price shall be payable by the

iyer to the Sellers as follows:

(a) the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) to

e Sellers in cash, by certified or bank check or wire transfer at the closing of the within

insaction;

(b) the sum of ONE MILLION SEVEN HUNDRED THOUSAND

1,700,000.00) DOLLARS shall be secured by delivery to Seller of a Financial Security

ond/Note Performance Bond issued by an AM Best A+ rated Insurance Company or

her Financial Entity in accordance with the terms contained in paragraph 3 below; a

omissory note (hereinafter referred to as the ANote@) for said amount with interest

ereon payable in equal and consecutive quarterly installments during the life of the Note.

ne interest to be charged shall be based upon Libor plus Two (2%) Percent, shall be

xed on the date of closing but shall be adjusted on each anniversary of the closing date

ased upon the Libor rate that exists at each anniversary plus 2%. Principal payments shall

so be made in equal and consecutive quarterly installments, however each payment of

rincipal shall be based on a schedule of fourty such quarterly payments. The first payment

f principal and interest shall be due and payable on the first day of the month following the

nd of the initial three month quarterly period following the date of closing. The final



2

payment shall be due and payable on the date the 21st payment would be due in payable. Any payment received more than 10 days after the due date shall incur a late charge of $100.00.

(c)    The promissory note, in addition to the Financial Guaranty Bond shall have the unconditional financial guarantee of Modular Mechanical Systems, Inc., a New York Corporation with offices located at 39-12 Crescent Street, Long Island City, New York 11101 hereinafter referred to as AGuarantor@.

3. **Financial Security Bond**: To secure its payment of the Note, the Buyer shall deliver  to the Sellers at closing a Financial Security Bond/Note Performance Bond, Guaranteed renewable, on a yearly basis, for the entire Term of the Note or which shall be specifically in full force and effect for the entire term of the Note. Said Financial Security Bond/Note Performance Bond shall guaranty to the Seller that the payments due under the terms of the within agreement and the Note hereinabove described shall be made throughout the term until said Note is paid in full. A sample Note Performance Bond, substantially in the form to be utilized in the within transaction is attached hereto as exhibit 'A'

4. **Warranties.** As of the date hereof and on the Closing Date, Sellers, individually and collectively, warrant and represent as follows:

(a)    Sellers have full right, power and legal authority to sell, convey and transfer their respective stock and that said stock, upon conveyance to Buyer, shall be legally issued, fully paid and non-assessable;

(b)    Except for the stock of the Company transferred hereunder, Lorette Resch and Michael Resch warrant and represent that there exists no other shares of stock, whether common, preferred or of any other class or description, or any warrants or rights of



3

any kind to the issuance of or title to any shares of stock of the Company and that, the stock owned by Loretta Resch and Michael Resch and to be conveyed to Buyers hereunder is not subject to any voting trust or agreement or any other agreement among shareholders restricting or prohibiting the transfer thereof or in any other manner affecting said stock.

(c) That Sellers warrant and represent that there is no shareholders agreement or any other agreement executed by and among the Sellers that would grant to either of the Shareholders, individually, the right to terminate the within agreement.

(d) That there are no pending or threatened actions, claims or proceedings affecting the Company before any court, governmental agency or arbitrator, which may materially or adversely affect the financial condition of the Company nor, to the best of their knowledge, is there any basis for any such actions, claims or proceedings;

(e) That the Company is in compliance with all applicable state, federal and local laws rules, regulations and orders including, but not limited to, the payment of all taxes and that said company shall remain in compliance through and including the date of closing;

(f) That the Company does not have any indebtedness or other liabilities outstanding other than those disclosed and provided to Buyer prior to the execution of the within agreement and which disclosures, if any, shall be reduced to writing within ten (10) days from the date of execution and shall be deemed attached hereto as Exhibit 'B' and made part hereof as of the date of execution of the within agreement. If the Company has no indebtedness then Exhibit 'B' shall be attached and so state that no such indebtedness exists or will exist on the date of closing.

4

5. **Closing.** The closing of the within transaction shall take place at the offices of Chicago Title Insurance Company, 245 Main Street, Second Floor, White Plains, New York 10601 on or after the 29th day of August, 2003 or on such other date and at such other place as the parties may agree.

a)    At the Closing, all documents shall be executed, stock certificates executed and funds delivered as is necessary to complete such purchase and Seller=s hereby irrevocably appoint William FioRIto as their attorney in fact for the sole purpose of surrendering their stock and issuing new stock to Buyers and for making the necessary stock transfers on the books of the company. Seller shall deliver to Buyer the aforesaid stock certificates, being 1000 shares of common stock of the Company (represented by stock Certificate Nos. 1 & 2), fully executed and validly issued and endorsed, together with the newly issued stock as hereinabove described

6. **Sellers Additional Representations and Warranties**: The Sellers represent and warrant as follows:

(a) **CORPORATE EXISTENCE AND STANDING**. The Company is a company duly organized, validly existing and in good .standing under the laws of the U.S. Virgin Islands. All taxes owed by the Company have been paid in full or will at closing be paid in full from the proceeds of this stock purchase.

(b) **SUBSIDIARIES.** The Company has no subsidiaries.

(c) **CAPITALIZATION**. The Company=s entire authorized capital stock consists of 1,000 shares of common stock with no par value of which 1,000 are issued, are presently outstanding and are owned by the Sellers. All said issued and outstanding shares have been validly issued and are fully paid.

5



(d) **OWNERSHIP OF STOCK AND ASSETS.** The Sellers are the sole owners, free and clear of any encumbrances whatsoever of the 1,000 shares of the common stock of the Company being sold. The Company is the sole owner of the assets constituting the hotel known as Island Beachcomber located in St. Thomas, U.S. Virgin Islands and owns the same free and clear of any claims, liens, liabilities or other encumbrance and Company has full right and authority to conduct its business in the manner conducted by Sellers at the property located and described in the Lease Agreement between the Virgin Islands Port Authority and Allison Enterprises, Inc. dated November 10, 1982 pertaining to Parcel No. 70T, the Amendment thereto entitled Amendment to Beachcomber Lease also dated November 10, 1982 pertaining to Parcel No. 70U and the amendment to said lease(s) dated August 29, 1988 and any and all other leases or amendments that pertain to the Island Beachcomber Hotel including but not limited to the parcels hereinbelow described and which descriptions may/shall be verified and/or amended by Chicago Title Insurance Company and/or their local affiliates and representatives at or prior to closing.

>  That Portion of Parcel NO. 70T,
>  Estate Lindberg Bay
>  NO. 4A Southside Quarter
>  St. Thomas, Virgin Islands as shown on
>  PWD C9-102- T69, excluding Parcel No. 70 T-1 as
>  shown on PWD NO. D3-375-T82. and
>
>  Parcel 70U
>  Estate Lindberg Bay
>  No. 4 Southside Quarter
>  St. Thomas, Virgin Islands

Included in the assets owned by the Company are the lease with The Government of the Virgin Islands acting through the Virgin Islands Port Authority, the buildings and improvements located on the above property and the furnishings and fixtures presently



6

located therein including all replacements, service contracts, government permits all as more fully described on Exhibit 'C' annexed hereto and made a part hereof ( if said documents to be attached as Exhibit 'C' are not attached at the execution of the within Agreement said documents shall be supplied within ten (10) days from the date hereof or within such other period of time as the parties may subsequently agree to and such documents shall be deemed to have been attached as Exhibit 'C' as of the date of execution ) all in Aas is@ operating condition together with all of Company=s right title and interest in and to The Island Beachcomber Hotel (hereinafter referred to as the AHotel@), all of the assets of the Company and Hotel as shown on any other assets owned by the Company related to the ownership and operation thereof in St. Thomas, U.S. Virgin Islands (hereinafter collectively the AAssets@) The assets of the Company include the name and business of Hotel; all mailing lists and sales brochures, videos and other sales material used in connection with the operation of the Hotel; and include all of the Good Will connected thereto including Sellers= agreement that neither they nor any affiliate, former or present employee , relative or associate nor any other person or entity that has been in any way associated with them and the Island Beachcomber Hotel shall  enter into the hotel/guesthouse business in the Virgin Islands of the United States for a period of five (5) years following closing (hereinafter collectively the Good Will@).

(e) **COMPANY=S LIABILITIES. ASSETS AND FINANCIAL CONDITION**. The Company represents that there are no liabilities outstanding of the Company other than those disclosed and provided to Buyers within ten (10) days following the execution of this Agreement and which disclosures are deemed to be attached hereto and made part hereof as hereinabove described. Sellers warrant that since September 2002 and up to the time of execution of this agreement there have been no changes in the ownership of the Company

7

or in the business being conducted and will warrant up to the date of closing, that there has not been:

(i) any change in the financial condition, liabilities, and business of the Company other than changes in the ordinary course of business.

(ii) any change, destruction or loss, whether or not covered by insurance materially and adversely affecting any of the properties or business of the Company.

(iii) any litigation or proceeding pending, or to the Seller=s knowledge, threatened against or relating to the Company or to any of its properties or business.

(iv) any transfer of any of the assets of Seller at the end of the operations of the Island Beachcomber shall be disclosed in full to Buyers and such Disclosures shall be deemed attached hereto and made part hereof. Sellers warrant and represent that the Company=s activities shall continue as a fully stocked Hotel Operation maintaining normal inventories for the operation up to and until the Closing of the transaction contemplated hereby.

(f) **CONTRACTS/OBLIGATIONS**. Company has not entered into any contract nor created any obligation on behalf of the Company except in the regular course of business and except for one oral contract with one individual who receives payment of the sum of $100.00 per month, and all such contracts and obligations shall be disclosed to Buyers subsequent to the execution of this Agreement. All such disclosures shall be deemed attached hereto and made part hereof. With reference to the Union Contract said contract shall have been assigned to the Company and approved by the Union and a copy thereof shall be provided to the Buyers and shall be deemed attached hereto and made part hereof. Sellers shall provide to buyers at closing a statement from the Union stating that all Dues and Benefits including but not limited to Health, Education and Welfare Benefits are paid to

8



the date of closing. The existing lease agreement between the Company and the Virgin Islands Port Authority dated November 10, 1982, shall be in good standing at closing to be evidenced by a Certificate to be Issued by the Virgin Islands Port Authority stating to the effect that the lease is in good standing and that the lease payments have been paid and all duties of Company thereunder to be performed have been performed and that there are no known defaults on the part of the Company. In the event such a document is not available from the Virgin Islands Port Authority sellers shall warrant that the lease is in good standing and that the lease payments have been paid and all duties of Company thereunder to be performed have been performed and that there are no known defaults on the part of the Company and sellers shall further indemnify the purchasers against all damages in the event the what is warranted herein by Sellers is challenged by the Virgin Islands Port Authority or the Government of the Virgin Islands or any other person or entity.

All documents relating in any way to the operation of the Island Beachcomber Hotel by *Allison Enterprises Inc. are in the possession of Company and are included in the purchase.*

       (g) **DEPOSITS**. Seller warrants that it neither has nor does it take pre-paid reservations of any kind.

       (h) **LIABILITIES**. On the date of closing, Company shall have no liabilities.

    7. **Covenant Not To Compete**. The Sellers shall not Individually or collectively, directly or Indirectly, engage In and shall have no Interest in any business, firm, person, partnership, or corporation, whether as an employee, officer, director, agent, security holder, Creditor, consultant or otherwise that engages in, any activity that is the same or similar to, or competitive with, any activity to be engaged In by the Company within the United States Virgin Islands within five (5) years Immediately following the date of sale of the shares of stock covered hereunder. Further, they shall not divulge, communicate, use to the detriment



of the Company or the Buyer, or for the benefit of any other business, firm, person, partnership, or corporation, or otherwise, misuse, any of the Company=s confidential Information. business plans, marketing plans, data, or trade secrets, or other technical data, production methods, customer lists, or personal information. Sellers acknowledge that any such Information or data Sellers may have acquired was received in confidence and as a fiduciary of the Company. In the event that Buyer Is In default under this Agreement, the Leasehold Mortgage or the Promissory Note all part of this agreement, this paragraph 7, covenant not to compete, shall be null and void.

8. **Indemnity.** Without in any way limiting or diminishing the warranties, representations or agreements herein contained, or the rights or remedies available to the Buyer for the breach thereof, Sellers hereby agree to hold Buyers harmless from and against all loss, liability, damages, or expenses arising out of any claims, demands. penalties, fines, or other loss residing directly or Indirectly from the assertion against the Company of claims by any government, any corporation, partnership entity, or any person arising before the closing date and not fully disclosed herein and not specifically excepted by the provisions hereof. Sellers shall be fully liable for all employee benefits accrued as of the date of closing whether employed with Sellers, or their predecessor in interest, Allison Enterprises, Inc. The term Abenefit@ shall Include but not be Limited to sick leave, vacation leave, severance pay, employee pension contributions, if any, workman=s compensation and unemployment insurance, etc. All claims for employee benefits accruing or attributable to employment up to the date of closing shall be and remain the liability of Sellers and, subject to reasonable notice from Buyer to Sellers. may be offset by Buyer against funds due Sellers under Section 2(b) hereof.

10

9. **Forgiveness of Indebtedness/Release**: In consideration of the mutual promises and obligations herein contained, Sellers hereby forgive the Company for, and release the Company from all indebtedness owed them by the Company, including but not limited to, all stockholder loans made by its stockholders, jointly or individually, to the Company and shall indemnify, defend, and hold Company and Buyer harmless from any claims of and from Allison Enterprises, Inc., and anyone claiming by or through it.

10. **Indemnity of Sellers**:. Buyer shall provide to Sellers, a resolution of the Board of Directors of Modular Mechanical Systems, Inc. and/or a U.S. Virgin Islands company to be formed which resolutions shall authorize Buyer and Guarantor, as the case may be, and/or its assigns, authorizing Buyer to enter into this Agreement and Guarantors to Guaranty the balance due under this agreement pursuant to Paragraph 2b hereinabove written. In the event of Buyer=s breach hereof, Buyer agrees to hold Sellers and Company harmless from and against all loss, liability, damages or expenses arising out of any claims, demands, penalties, fines or other loss resulting directly or indirectly from the assertion against the Company, Buyer, the Hotel, or Seller=s, of claims by any government , any corporation, partnership, entity or any person arising after the closing date. Buyer shall be fully liable for all employee benefits accrued after the date of closing. The term Abenefit® shall include but not be limited to sick leave, vacation leave, severance pay, employee pension contributions, if any, workman=s compensation and unemployment insurance, etc.

11. **Indemnity of Buyer.**   Seller shall provide to Buyer, a resolution of the Board of Directors of Allison Enterprises Inc which resolutions shall have authorized the sale by Allison Enterprises, Inc. of all of its right title and interest in the Island Beachcomber Hotel as hereinabove described to Buyer. In the event of Seller's breach hereof, Seller agrees to

hold Buyer harmless from and against all loss, liability, damages or expenses arising out of any claims.

12. **Conduct of Business**. Until the Closing date, Seller will use its best efforts to conduct its business in a reasonable ands prudent manner in accordance with past practices; will engage in no transaction out of the ordinary course of business; will enter into no agreement or transaction extending beyond the closing date without the express written consent of Buyers; will use its best efforts to preserve its existing business organization and relations with its employees, customers, suppliers, and others with whom it has a business relationship; will not dispose of any of the assets, except such as are retired and replaced in the ordinary course of business; will conduct its business in compliance with all applicable laws and regulations; will not make any distribution to shareholders; and will not pay any bonuses or make and salary or wage increases.

13. **Access**. During reasonable business hours, Seller will permit Buyer to have access to the premises in which Seller conducts its business, and to all its books, records, and personnel. Seller will furnish to Buyer such Financial Data, Operating Data and other information that Buyer shall reasonably request and will immediately hand to Buyer or its representatives for review, its stock book, minute book, and copies of all retirement plans, employment agreements, leases, contracts with suppliers, and other contracts or or documents to which it is a party. Upon request of the Buyer, Seller shall authorize Buyer to examine make complete photocopies of all documents and information relating to the operation of the Hotel and all such documents and information shall be deemed attached hereto and made part hereof.

14. **Negotiations With Others**. During the pendency of this Agreement, Seller shall not offer the assets to, entertain offers for the assets from, negotiate for sale of the assets



to, or make information about the assets available to, any third party without the express written agreement of Buyer.

15. **No Broker**: The parties represent and warrant to each other that all negotiations relative to this Agreement have been carried on by them directly, Without the involvement of any broker.

16. **Survival of Warranties**: All representations warranties, and agreements made by the parties to this Agreement or pursuant hereto, shall survive the closing.

17. **Modification**: This Agreement and each of its provisions shall not be modified or amended except with the unanimous written agreement of Buyer and Sellers

18. **Bind and Inure**: This Agreement shall be binding upon and inure to the benefit of the shareholders, their heirs, distributee=s, legal representatives, successors and assigns. The word Ashareholder@ used in this Agreement means any person, firm or Company or other entity at any time owning any of the stock of the Company.

19. **No Waiver, Remedies Cumulative**: No failure to exercise and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and are not exclusive of any remedies provided by law.

20. **Headings.**  The headings as used in this Agreement are for convenience only and shall not be construed to have any meaning whatsoever or impact upon the meaning of any of the clauses or paragraphs herein contained.

21. **Construction**: This Agreement is being executed and delivered and is intended to be performed in the U. S. Virgin Islands, but shall be construed and enforced in accordance with the laws of the State of New York with Venue in Westchester County.

13

22. <u>Notices</u>: All notices, requests, demands, and other communications hereunder shall be in writing, and shall be deemed to have been duly given if delivered by FedEx or mailed, certified mail, return receipt, postage prepaid if to Sellers:

| | |
|---|---|
| To Company: | 17 Raiders Lane<br>Darien, Connecticut 06820<br>Attention: Michael J. Resch |

| | |
|---|---|
| To Company Shareholders:<br>Lorette M. Resch<br>Michael J. Resch | 17 Raiders Lane<br>Darien, Connecticut 06820<br>Attention:<br>Lorette M. Resch & Michael J. Resch |

or at any other address as they may have furnished to the Buyer in writing, to the Company

and if to the Buyer:

To: Beachcomber USA, Inc.

c/o Austern & Austern, LLP

34 Lew Place
East Norwich, New York 11732
Attention: Jonathan Austern, Esq.

And

To: Beachcomber USA, Inc.
  c/o Allison Enterprises, Inc.
  d/b/a Island Beachcomber Hotel

Lindbergh Bay Road
St. Thomas, U.S. Virgin Islands 00802
Att: Sharon Chelednik and/or General
  Manager

14

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date and year

first above written.


BEACHCOMBER USA, INC                    ALLISON ENTERPRISES, INC.
And/or its Assigns, as Purchaser


by _____          by _____ ATTORNEY IN
      JOSE GARCIA, President                  LORETTE M. RESCH    FACT FOR :


                                        _____
                                            MICHAEL J. RESCH, Seller


                                        _____ ATTORNEY IN
                                            LORETTE M. RESCH, Seller  FACT FOR :

Exhibit
B

## PROMISSORY NOTE

**New York, New York, U.S.A.**

**One Million Seven Hundred Thousand (U.S. $ 1,700,000.00) Dollars**

**Date: September 23, 2003**

**Amount
Interest Rate:**

FOR  VALUE RECEIVED, the undersigned, All American Industries Corp.
organized and existing under the laws of the State of Delaware, with
offices c/o Austern & Austern, LLP located at  34 Lew Place, East
Norwich, New York 11732, promises to pay  to the order of Michael S.
Resch and Lorette M. Resch, at 17 Raiders Lane, Darien Connecticut
06820, the principal sum of **One Million Seven Hundred Thousand
and no/100 United States Dollars (U.S. $ 1,700,000.00),** and interest on
the outstanding· principal balance from the date hereof at Libor plus two
percent (2%).  The rate of interest under this note shall be adjusted on each
anniversary of the closing date based upon the Libor rate that exists at
each anniversary plus two percent (2%).

**Payment
Schedule:**

The principal amount of this note shall be payable in fourty (40) equal and
consecutive quarterly installments.  The first payment of principal and
interest shall be due and payable on January 1, 2004.  The final payment
shall be due and payable on the date the 41st payment would be due and
payable.  Any such payment received more than ten (10) days after the due
date shall incur a late charge of One Hundred (U.S. $100.00) Dollars.

**Default:**

> If any of the following events shall occur, the outstanding principal balance of this note together with accrued interests thereon shall, on demand by the holder of this note, be due and payable: any amount owing under this note is not paid when due; a default under any other provision of this note or under any guarantee or other agreement providing security for the payment of this note; a breach of any representation or warranty under this note or under any such guarantee or other agreement; the liquidation, dissolution, death, or incompetency of the undersigned or any individual, corporation, partnership or other entity guaranteeing or providing security for the payment of this note; the sale of a material portion of the business and assets of the undersigned or any corporation, partnership or other entity guaranteeing or providing security for payment of this note; the filing of a petition of bankruptcy, insolvency or similar law by the undersigned or by any individual, corporation, partnership or other entity guaranteeing or providing security for the payment of this note; the making of any assignment for the benefit of creditors by the undersigned or by any individual, corporation, partnership or other entity guaranteeing or providing security for the payment of this note; the filing of a petition under any bankruptcy, insolvency or similar law against the undersigned or against any individual, corporation, partnership or other entity guaranteeing or providing security for the payment of this note and such petition not being dismissed within a period of thirty (30) days of the filing.

**Default Interest:**

> The outstanding balance of any amount owing under this note which is not paid when due shall bear interest at the rate of nine percent (9%) per annum above the rate that would otherwise be in effect under this note.



**Usury Clause:**

Notwithstanding any other provision of this note, interest under this note shall not exceed the maximum rate permitted by law; and if any amount is paid under this note as interest in excess of such maximum rate, then the amount so paid will not constitute interest but will constitute a prepayment on account of the principal amount of this note. If at any time the interest rate under this note would, but for the provision of the preceding sentence, exceed the maximum rate permitted by law, then the outstanding principal balance of this note shall, on demand by the holder of this note, become and be due and payable.

**Where to Make Payments:**

All payments of principal and interest shall be made in lawful currency of the United States of America in immediately available funds before 3::00 P.M. Eastern Standard Time on the due date thereof at 17 Raiders Lane, Darien, Connecticut 06820, U.S.A., for the account of Lorette M. Resch and Michael J. Resch, or in such other manner or such other place as the holder of the note designates in writing.

**Expenses:**

The undersigned agrees to pay on demand (i) all expenses (including, without limitation, legal fees and disbursements) incurred in connection with the negotiation and preparation of this note and any documents in connection with this note, and (ii) all expenses of collecting and enforcing this note and any guarantee or collateral securing this note, including without limitations, expenses, and fees of legal counsel, court costs and the cost of appellate proceedings.

**Governing Law;**

**Agent for Service of Process:**

This note and the obligations of the undersigned shall be governed by and construed in accordance with the laws of the State of New York, U.S.A. For purposes of any proceeding involving this note or any of the obligations of the undersigned, the undersigned hereby submits to the



non-exclusive jurisdiction of the courts of the State of New York and of the United States having jurisdiction in the State of New York and agrees not to raise and waives any objection to or defense based upon the venue of any such court or based upon *forum non conveniens*. The undersigned agrees not to bring any action or proceeding with respect to this note or with respect to any of its obligations in any other court unless such courts of the State of New York and the United States determine that they do not have jurisdiction in the matter. For purposes of any proceeding involving this note or any of the obligations of the undersigned, the undersigned hereby irrevocably appoints Jonathan Austern, Esq., with offices at Austern and Austern, LLP, 34 Lew Place, East Norwich, New York, 11732, its agent to receive service of process for it and on its behalf. The undersigned will at all time maintain an agent to receive service of process in the State of New York on its behalf with respect to this note, and in the event that, for any reason, the agent named above or any successor agent shall no longer serve as agent of the undersigned to receive service of process in the State of New York, the undersigned shall promptly appoint a successor and advise the holder of this note thereof.

**Waiver of Presentment, Etc.:**

The undersigned waives presentment for payment, demand, protest and notice of protest and of non-payment.

**Delay; Waiver:**

The failure or delay by the holder of this note in exercising any of its rights hereunder in any instance shall not constitute a waiver thereof in that or any other instance. The holder of this note may not waive any of its rights except by an instrument in writing signed by the holder.

**Prepayment:**

The undersigned may prepay all or any portion of the principal of this note at any time any from time to time without premium or penalty. Any such pre-payment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be



accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

**Amendment:**

This note may not be amended without the written approval of the holder.

-MAKER-

**ALL AMERICAN INDUSTRIES CORP**

By:

Name:  **Frank Nocito**

Title:  **President**